**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| DONNELL BOYD | CIVIL ACTION |
| VERSUS | |
| TRINITY INDUSTRIES, INC. | NO. 14-00469-SDD-RLB |

**RULING**

Before the Court is a *Rule 12(b)(6) Motion to Dismiss*[1] filed by Defendant, Trinity Marine Products (hereinafter "Defendant" or "Trinity"). Plaintiff, Donnell Boyd ("Boyd"), has filed an *Opposition*[2] to Defendant's *Motion*, to which Defendant has filed a *Reply*.[3] For the following reasons, Defendant's *Motion* shall be denied.

**I. FACTUAL BACKGROUND & PROCEDURAL HISTORY**

This dispute arises out of allegedly racially-motivated employment actions taken by Trinity against Donnell Boyd. Boyd, an African American, worked for Trinity as a welder and a crane operator for approximately seven years. On January 7, 2013, Boyd claims he was allegedly terminated for "a safety violation." Following his termination, Boyd filed a Charge of Discrimination with the EEOC, in which he claimed to have been discriminated against because of his race and as a form of retaliation. After receiving his right to sue letter, Boyd filed the instant lawsuit against Trinity in which he asserted Title VII claims of race discrimination, harassment, retaliation, and hostile work environment. As a result of his employer's alleged discriminatory conduct, Boyd claims to have suffered emotional distress, mental anguish, humiliation, and embarrassment,

---
[1] Rec. Doc. 5.
[2] Rec. Doc. 17.
[3] Rec. Doc. 18.
DM No.26492

1

and he seeks compensatory and punitive damages, back pay and benefits, reinstatement with promotions, and reasonable attorney's fees and costs. Trinity now moves this Court for dismissal of Boyd's claims on the grounds that his claims are time-barred under Title VII and for failure to state a claim.

## II.　APPLICABLE LAW - Rule 12(b)(6) Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[4] However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."[5] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[6] Rather, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[7] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[8] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] Furthermore, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does

---

[4] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999)).
[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (hereinafter "*Iqbal*") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, at 555 (2007) (hereinafter "*Twombly*").
[6] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (S.D. Tx. May 3, 2012)(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[7] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (5th Cir. 2007)(quoting *Twombly,* 550 U.S. at 570).
[8] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[9] *Id.*

DM No.26492

2

not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[10] On a motion to dismiss, the court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[11]

## III. ANALYSIS

### A. Title VII Administrative Filing Deadlines

In deferral states,[12] such as Louisiana, a Title VII plaintiff has 300 days from the alleged discriminatory act to file a charge of discrimination with the Equal Employment Opportunity.[13] In other words, a discrimination claim not brought within 300 days of the alleged discriminatory act is time-barred. The time to file a claim of discrimination with the EEOC "begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred."[14] "[A] one-time employment event, including the failure to hire, promote, or train and dismi[ss]als or demotions, is 'the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued.'"[15] These "discrete adverse actions, although racially motivated,

---

[10] *Twombly*, 550 U.S. at 555 (internal citations and brackets omitted).
[11] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)(quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).
[12] "The Louisiana Commission on Human Rights has authority to remedy employment discrimination, rendering Louisiana a 'deferral state.'" *Conner v. La Dept. of Health and Hosp.*, 247 Fed.Appx. 480, at 481 (5th Cir. 2007). (if one thing is abbreviated I think the other words should be too – like La for Louisiana and Hosp. for Hospital).
[13] 42 U.S.C. § 2000e-5(e).
[14] *Ramirez v. City of San Antonio*, 312 F.3d 178, 182 (5th Cir. 2002)(quoting *Vadie v. Mississippi State University*, 218 F.2d 358, 362 (5th Cir. 2000)).
[15] *Culotta v. Sodexo Remote Sites Partnership*, 864 F.Supp.2d 466, 471 (E.D.La. 2012)(quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001)(quoting *Huckabay v. Moore*, 142 F.3d 233, 240 (5th Cir. 1998))).

cannot be lumped together with the day-to-day pattern of racial harassment" and therefore, if otherwise untimely, cannot be saved by the continuing violation doctrine.[16]

According to the *Original* and *Amended Complaints* and their attachments, Boyd filed an EEOC Charge on July 17, 2013 alleging race discrimination.[17] Therefore, Trinity argues that all of the alleged discriminatory conduct that occurred prior to September 21, 2012 is time-barred. In response, Boyd argues that the acts that occurred outside of the 300 day period should be considered under the continuing violations doctrine.

The following are the specific incidents of purportedly discriminatory conduct that, according to the *Complaints*, occurred between 2007 and 2013:

- On September 17, 2007, Plaintiff alleges he was issued an inappropriate warning and that he was denied "training on a machine" and had to train "on his own";

- On January 16, 2008, Plaintiff alleges he was issued an inappropriate warning and that he was denied "training on a machine" and had to "train on his own";

- In March of 2008, Plaintiff was allegedly denied two days off of work;

- On June, 1, 2008, Plaintiff alleges he was issued a "poor and false performance evaluation";

- On July 3, 2008, Plaintiff alleges he was improperly written up for "poor performance" and issued an inappropriate warning;

- On July 10, 2008, Plaintiff alleges he was issued an inappropriate warning and that he was denied "training on a machine" and had to train "on his own";

- On July 17, 2008, Plaintiff alleges he was issued an inappropriate warning;

---

[16] *Mayes v. Office Depot, Inc.*, 292 F. Supp. 2d 878, 888 (W.D. La. 2003).
[17] Rec. Docs. 1 and 2.
DM No.26492

- On January 15, 2009, Plaintiff alleges he was written up and subjected to "unsafe working conditions";

- On January 15 and December 13, 2010, Plaintiff alleges he was issued inappropriate warnings;

- On February 12, 2012, Plaintiff alleges his supervisors were told to "find a way to fire" him; and

- On July 12, 2012, Plaintiff alleges he was issued an inappropriate warning.

Significantly, Boyd also alleges that, as "[p]art of the discrimination, harassment, and retaliation" he was "set up" by Trinity and ultimately terminated on January 7, 2013.[18] Without this specific allegation, however, Boyd's claims of discrimination, harassment, and hostile work environment would be time-barred on their face. Instead, the Court will now consider whether Boyd's discrimination, harassment, and hostile work environment claims are still viable under the continuing violation theory.

The Fifth Circuit has "recognized what is called a 'continuing violation theory' in the context of determining whether a Title VII claim is time-barred."[19] The continuing violation theory "generally applies to hostile work environment claims, as opposed to intentional acts of discrimination, like demotion or failure to promote."[20] It "provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred."[21] "Although there is no definitive standard for what constitutes a continuing violation, the plaintiff seeking to invoke this doctrine must demonstrate more than a series of discrete

---

[18] The Court notes that, contrary to Trinity's position otherwise, Boyd actually did mention his *EEOC Intake Questionnaire* in his *Complaint*. Rec. Doc. 1, p. 2, ¶2. Therefore, the Court may take judicial notice of its contents including Boyd's termination date of January 7, 2013. Rec. Doc. 1-1, p. 1. According to Boyd, his coworkers and supervisors set him up, claiming that he had injured another employee while operating a crane, when, in fact, he had not. Rec. Doc. 17-1, p. 8.
[19] *Vidal v. Chertoff*, 293 Fed.Appx. 325, 327 (5th Cir. 2008)(citing *Huckabay*, 142 F.3d at 238)).
[20] *Vann v. Mattress Firm, Inc.*, 2014 WL 4677459, *4 (S.D.Tex. Sept. 18, 2014).
[21] *McGregor v. La. State Univ. Bd. of Supv.*, 3 F.3d 850, 865 (5th Cir. 1993)(internal citations omitted).
DM No.26492

discriminatory acts: 'He must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action.'" [22]

In *Berry v. Board of Supervisors of Louisiana State University*,[23] the Fifth Circuit identified at least three factors that courts may consider to determine whether a plaintiff can support a continuing violation claim:

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of the most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?[24]

Ultimately, the inquiry is a fact-specific one and, for purposes of a 12(b)(6) motion to dismiss, Boyd's alleged facts must be accepted as true.[25]

Due to the fact-intensive analysis required to determine whether a continuing violation exists, in combination with the fact that Boyd filed his *Original and Amended Complaints pro se*, the Court finds that the allegations of discrimination, harassment, and hostile work environment involved the same type of discrimination—specifically, race discrimination resulting in a hostile work environment. The frequency of the allegations is by far Boyd's weakest point. Nevertheless, the third and perhaps most important factor weights in Boyd's favor, as the Court finds that the alleged acts of

---

[22] *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001)(quoting *Huckabay*, 142 F.3d at 239 (5th Cir. 1999)(internal citations omitted).
[23] *Berry v. Board of Supervisors of Louisiana State University*, 715 F.2d 971 (5th Cir. 1983).
[24] *Id.* at 981.
[25] *Id.*

DM No.26492

discrimination do not have the degree of permanence that should have triggered Boyd to assert his rights. Accordingly, Trinity's *Motion to Dismiss* Boyd's claims on the grounds of prescription shall be denied at this stage.

> **B. Dismissal of Race Discrimination Claims: Non-Ultimate Employment Decisions**

Trinity seeks dismissal of Boyd's race discrimination claims because they are not based on ultimate employment decisions. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."[26] "In the context of a racial discrimination claim, adverse employment actions involve 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating."[27] As previously discussed, in his *Original Complaint* Boyd referenced his *Charge of Discrimination* wherein he expressed his disagreement with the reasons for his termination from Trinity.[28] In his *Original Complaint*, he expressly alleged that his termination from Trinity was "on account of his race, African-American, in violation of Title VII of the Civil Rights Act, 42 U.S.C. [§] 2000e et seq., wherein [Trinity] did not subject similarly white employees to the same obstacles in gaining promotions, training and assignments."[29] He alleged that, prior to his termination, a meeting was conducted by Carey Fowler where he told them to "find a way to fire" Boyd. Subsequently, Boyd alleges he was "set up" to be fired. The Court finds that Boyd's termination on January

---

[26] 42 U.S.C. § 2000e-2(a)(1).
[27] *Stone v. Louisiana Dept. of Revenue*, 2014 WL 5654307, at *6 (quoting *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, at 282 (5th Cir. 2004)).
[28] Rec. Doc. 1, p. 1, ¶2.
[29] Rec. Doc. 1, p. 9, ¶19.
DM No.26492

7, 2013 qualifies as an adverse employment decision. Accordingly, Trinity's *Motion to Dismiss* Boyd's race discrimination claims shall be denied.

The Court further notes that whether Boyd has satisfied the Rule 12(6)(6) pleading standard on his race and harassment claims has not been properly briefed by either party.[30] Therefore, the Court shall not reach the merits on these issues in this *Ruling*.

### C. Retaliation Claim

Trinity seeks dismissal of Boyd's retaliation claim on Rule 12(b)(6) grounds. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[31] A complaint is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32] "Determining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[33] While the complaint need not articulate "detailed factual allegations," it must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do."[34]

In order to establish a *prima facie* case for unlawful retaliation under Title VII, Boyd must allege that "(1) he engaged in protected activity, as described in Title VII; (2)

---

[30] In a footnote, Trinity claims that any remaining claims of race discrimination and/or harassment "in Plaintiff's Complaint are vague and conclusory assertions without sufficient factual content to meet the *Twombly* standard. For these reasons, Trinity is seeking dismissal of Plaintiff's Title VII race discrimination and harassment claims in their entirety." Rec. Doc. 5-1, p. 6, fn. 3. (reiterated in Rec. Doc. 18, p. 7, fn. 2).
[31] *Iqbal*, 556 U.S. at 678 (2009)(quoting *Twombly*, 550 U.S. at 570 (2007)).
[32] *Id.*
[33] *Id.* at 679.
[34] *Id.* at 678 (quoting *Twombly*, 550 U.S.. at 555).
DM No.26492

he suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action.[35] "An employee has engaged in [a] protected activity if she has (1) opposed any practice made an unlawful employment practice by statute [42 U.S.C. § 2000e-2(a)], or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or hearing."[36] An adverse employment action in Title VII retaliation is not limited to ultimate employment decisions, and turns on whether the action was materially adverse such that it would "have dissuaded a reasonable worker from making or supporting a charge of discrimination."[37]

According to Boyd's *Original and Amended Complaints*, and argument made by his counsel in his *Opposition Memorandum*, he was retaliated against for "having objected to defendant's race discrimination in promotions, training and assignments."[38] Boyd contends the retaliation included being denied a pay raise "because it was personal," being criticized for not making quota, not being provided with assistance when working on a job requiring more than one person, being told not to contact the corporate office,[39] and ultimately his termination on January 7, 2013. According to Boyd, immediately preceding his termination, an African American co-worker initially accused Boyd of "almost hit[ting] him with wall" but later changed his story and actually

---

[35] *Washington v. M.Hanna Const.Inc.*, 299 Fed.Appx. 399, 401 (5th Cir. 2008)(quoting Mota v. Univ. of Tex. Houston Health Science Ctr., 261 F.3d 512, 519 (5th Cir. 2001)).
[36] *Alleman v. Louisiana Department of Economic Development*, 698 F.Supp.2d 644, 663-64 (M.D.La. 2010).
[37] *Anthony v. Donahoe*, 460 Fed. Appx. 399, 404 (5th Cir. 2012)(quoting *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006)).
[38] Rec. Doc. 1, p. 9 ¶20 Boyd reiterated this allegation at p. 8, ¶17 ("Boyd complained about the discrimination, harassment and retaliation based on race to both immediate supervisor and to the corporate office.").
[39] Rec. Doc. 1, p. 8, ¶17.
DM No.26492

9

accused Boyd of hitting him.[40] Aside from this, Boyd fails to allege any factual support to maintain a viable retaliation claim.

While the Court is inclined to dismiss Boyd's retaliation claim on Rule 12(b)(6) grounds, it finds that, due to the unique circumstances of this case, it would be improper to dismiss this claim without first giving Boyd's newly enrolled counsel the opportunity to file an amended complaint to correct the pleading deficiencies. Boyd filed both his *Original* and *Amended Complaints pro se* prior to his counselor's enrollment. Within the Fifth Circuit, the general rule is that the Court should not dismiss a *pro se* Complaint for failure to state a claim under Rule 12(b)(6) without giving plaintiff the opportunity to amend. Based on the foregoing Fifth Circuit guidance, the Court shall give Boyd the opportunity to amend his *Complaint* in order to correct his pleading deficiencies as to his retaliation claim. The Court shall deny Trinity's *Motion to Dismiss* as to Boyd's retaliation claim without prejudice.

---

[40] Rec. Doc. 1, p. 4-5, ¶9.
DM No.26492

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the *Motion to Dismiss*[41] filed on behalf of Trinity Industries, Inc. is DENIED.

**IT IS FURTHER ORDERED** that Trinity Industries' *Motion to Dismiss* Plaintiff's retaliation claim is DENIED without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff, Donnell Boyd, is hereby granted leave to amend his *Complaint* and any such amendments shall be filed within twenty-one (21) days of this Ruling.

In all other respects, the denial of this *Motion to Dismiss* is with prejudice.

Signed in Baton Rouge, Louisiana, on June 30, 2015.

*Shelly D. Dick*
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[41] Rec. Doc. 5.
DM No.26492