UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DONNELL BOYD                                                              CIVIL ACTION

VERSUS
                                                                          14-469-SDD-RLB

TRINITY INDUSTRIES, INC.

## RULING

Before the Court is a *Motion for Summary Judgment*[1] filed by Defendant, Trinity Marine Products, Inc. (hereinafter "Defendant" or "Trinity"). Plaintiff, Donnell Boyd ("Boyd"), has filed an *Opposition*[2] to Defendant's *Motion*, to which Defendant has filed a *Reply*.[3] For the following reasons, Defendant's *Motion* shall be granted.

**I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY**

Boyd brought this employment discrimination case against his former employer, Trinity, in which he asserts claims of race discrimination and harassment.[4] In 2006, Trinity hired Boyd, an African American, to work as a welder at its facility in Port Allen, Louisiana and over time Boyd was promoted to Crane Operator, a position he held until his termination on January 10, 2013.[5] During his tenure at Trinity, Boyd attended several safety meetings and received information about Trinity's safety policies, including Trinity's

---

[1] Rec. Doc. 36.
[2] Rec. Doc. 40.
[3] Rec. Doc. 42.
[4] Boyd also brought a Title VII retaliation claim against Trinity which the Court previously dismissed. Rec. Doc. 33.
[5] Rec. Doc. 36-3, p. 111. The Human Resources Manager for Trinity Industries stated that Boyd was officially terminated from Trinity on January 10, 2013. However, during his deposition testimony Boyd acknowledged that his official termination date was January 9, 2013. Rec. Doc. 36-3, p. 29. This discrepancy does not change the Court's analysis or reasoning in this matter.
32764

1

Safety-Related Disciplinary Action.[6]  This policy authorizes a supervisor or manager to discharge an employee for a first offense in cases of major infractions, which include "reckless or any deliberate act which results in or could cause serious injury to one's self, co-workers or other persons, or serious damage to company property or equipment."[7] The policy further explains that a "highly dangerous act", such as improper crane movement and operation "that puts an employee or co-worker at risk of severe injury, may be considered a "major infraction" that "could lead to termination for a first offense."[8] During his orientation at Trinity, proper crane operation was discussed.

While Boyd was operating a crane on January 7, 2013, he allegedly hit Zach Washington ("Washington"), an African American co-worker, in the head with a suspended wall.[9]  After receiving information about the incident,[10] Boyd was suspended without pay while Trinity's Human Resources Manager Jonathan Westfall ("Westfall") conducted an investigation.[11]  During his investigation, Westfall interviewed and collected statements from witnesses and from Boyd, who denied hitting Washington.[12]  Westfall also reviewed Boyd's performance history, which included multiple safety infractions.[13] Ultimately, Trinity decided to terminate Boyd on January 10, 2013 for committing a "major infraction" of Trinity's safety policy.[14]

---

[6] Rec. Doc. 36-3, pp. 13-14.
[7] Rec. Doc. 36-3, pp. 14 and 51.
[8] Rec. Doc. 36-3, pp. 50-51.
[9] Rec. Doc. 36-3, p. 29.
[10] It is undisputed that Boyd did not report the alleged incident to Human Resources. Rec. Doc. 36-3, p. 30.
[11] Rec. Doc. 36-3, p. 111.
[12] Rec. Doc. 36-3, pp. 30, 87, 105-111.  Rec. Doc. 40-5, pp. 45-46.
[13] Rec. Doc. 36-3, p. 105.
[14] Rec. Doc. 36-3, pp. 105 and 111.
32764

Following his termination, Boyd filed an Intake Questionnaire with the Equal Employment Opportunity Commission ("EEOC") on June 10, 2013.[15] One week later, Boyd filed a Charge of Discrimination with the EEOC, in which he claimed to have been discriminated against on January 7, 2013 because of his race and terminated as a form of retaliation.[16] After receiving his Right to Sue Letter on April 30, 2014, Boyd filed the instant lawsuit against Trinity.[17]

Trinity now moves this Court for dismissal of Boyd's claims of race discrimination, racial harassment, and recovery of back pay on summary judgment. Trinity contends that dismissal is warranted on three grounds: (1) all of Boyd's allegations of race discrimination and racial harassment, except for his termination, are time-barred; (2) Boyd failed to exhaust administrative remedies with respect to all of his allegations except his termination; and (3) his race discrimination and racial harassment claims fail as a matter of law. In response, Boyd argues that genuine issues of material fact exist that preclude summary judgment.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] "An issue is material if its resolution could affect the outcome of the action."[19] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the

---

[15] Rec. Doc. 36-3, pp. 38; 80-87.
[16] Rec. Doc. 36-3, pp. 42 and 88.
[17] Rec. Doc. 1, p. 1.
[18] Fed. R. Civ. P. 56(a).
[19] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
32764

evidence."[20]  "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[21]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[22]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[23]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[24]  The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[25]  However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[26]  "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff

---

[20] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).
[21] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25).
[22] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[23] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).
[24] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[25] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[26] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).
32764

4

[can]not rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'"[27]

## III. ANALYSIS[28]

### A. Are any of Boyd's claims time-barred?

In his *Complaint*, Boyd identified several incidents of alleged race discrimination dating back to 2007.[29] In particular, Boyd has alleged that: (1) he was issued an inappropriate warning, denied training on a machine, and had to train "on his own" on September 17, 2007; (2) he was issued an inappropriate warning, denied "training on a machine," and had to "train on his own" on January 16, 2008; (3) he was denied time off in March of 2008; (4) he was issued a "poor and false performance evaluation" on June 1, 2008; (5) he was improperly written up for "poor performance" and issued an inappropriate warning on July 3, 2008; (6) he was issued an inappropriate warning, denied "training on a machine," and had to train "on his own" on July 18, 2008; (7) he was issued an inappropriate warning on July 17, 2008; (8) he was written up and subjected to "unsafe working conditions" on January 15, 2009; (9) he was issued inappropriate warnings on January 15, and December 13, 2010; (10) his supervisors were told to "find a way to fire" him on February 12, 2012[30]; and (11) he was issued an inappropriate warning on July 12, 2012.[31] Ultimately, Boyd was terminated by Trinity on January 10, 2013 due to the January 7, 2013 crane operating incident.

---

[27] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).
[28] The Court considers and incorporates its *Ruling* on Trinity's *Motion to Strike* certain provisions of Boyd's *Affidavit* and certain exhibits in rendering its decision on summary judgment. Rec. Doc. 52.
[29] Rec. Doc. 1. Boyd filed an *Amended Complaint* for the limited purpose of correcting Trinity's place of incorporation and principal place of business. Rec. Doc. 2.
[30] Boyd provides no factual basis for his conclusory allegation that 'his supervisors were told to fire him'. This rank hearsay is incompetent summary judgment evidence.
[31] Rec. Doc. 1.
32764

In a deferral state[32] like Louisiana, an aggrieved individual must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice.[33] Since Boyd's EEOC Charge of Discrimination was filed on July 17, 2013, Trinity argues that any of Boyd's Title VII claims arising from actions that occurred before September 21, 2012 are time-barred as a matter of law.[34]

In an attempt to defeat Trinity's argument, Boyd argues that the continuing violations doctrine keeps his claims alive. The Fifth Circuit has "recognized what is called a 'continuing violation theory' in the context of determining whether a Title VII claim is time-barred."[35] The continuing violation theory "generally applies to hostile work environment claims, as opposed to intentional acts of discrimination, like demotion or failure to promote."[36] "Unlike in a case alleging discrete violations, a hostile environment plaintiff is not limited to filing suit on events that fall within this statutory time period because her claim 'is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'"[37] "[T]he 300 day limitations period may be equitably tolled until the time the facts supporting a cause of action are or should be apparent to the employee."[38] "The core idea [being] that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or

---

[32] "The Louisiana Commission on Human Rights has authority to remedy employment discrimination, rendering Louisiana a 'deferral state.'" *Conner v. La. Dept. of Health and Hosp.*, 247 Fed.Appx. 480, 481 (5th Cir. 2007).
[33] 42 U.S.C. § 2000e-5(e)(1).
[34] Trinity acknowledges that the January 7, 2013 incident would not be time barred. Rec. Doc. 36-2, p. 10.
[35] *Vidal v. Chertoff*, 293 Fed.Appx. 325, 327 (5th Cir. 2008)(citing *Huckabay v. Moore*, 142 F.3d 233, at 238 (5th Cir. 1998)).
[36] *Vann v. Mattress Firm, Inc.*, No. H-12-3566, 2014 WL 4677459, at *4 (S.D. Tex. Sept. 18, 2014) (citing *Huckabay* at 238). The Court further observes that within the Fifth Circuit, the terms, continuing violation theory and the continuing violation doctrine, are used interchangeably.
[37] *Stewart v. Miss. Transp. Comm'n.*, 586 F.3d 321, at 328 (5th Cir. 2009)(quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, at 115 (2002)).
[38] *Henderson v. AT & T Corp.*, 933 F.Supp. 1326, 1333 (S.D.Tex. 1996).
32764

6

civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights."[39]

However, the continuing violation theory is limited:

First, the plaintiff must demonstrate that the "separate acts" are related, or else there is no single violation that encompasses the earlier acts. Second, the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window. Third, the continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to "honor Title VII's remedial purpose 'without negating the particular purpose of the filing requirement.'"[40]

The Fifth Circuit has identified three particularly relevant factors for courts to consider in determining whether a plaintiff can support a continuing violation claim:

The first is subject matter: Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?[41]

When "analyzing the permanence factor, the court examines whether a discrete event triggered a duty of the plaintiff to assert [his] rights."[42] The permanence inquiry basically focuses on "what the plaintiff knew or should have known at the time of the discriminatory act."[43] "If a plaintiff knows or with the exercise of reasonable diligence

---

[39] *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir.1998)(internal citations omitted).
[40] *Williams v. E.I. du Pont de Nemours and Co.*, 2015 WL 9581824, *8 (M.D.La. Dec. 30, 2015)(quoting *Stewart v. Miss. Transp. Com'n*, 586 F.3d 321, 328 (5th Cir. 2009)(internal citations omitted).
[41] *Berry v. Board of Supervisors of Louisiana State University*, 715 F.2d 971, 981 (5th Cir. 1983).
[42] *Gallentine v. Housing Authority of Port Arthur, Tex.*, 919 F.Supp.2d 787, 802 (E.D.Tex. 2013)(citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 476 (5th Cir. 1989)).
[43] *Id.* (citing *Sabree v. United Bhd. of Carpenters & Joiners*, 921 F.2d 396, 402 (1st Cir. 1990)).
32764

would have known that [he] suffered from discrimination, [he] 'may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one."[44]

Applying the Fifth Circuit's three factor test to the allegations and evidence before it on summary judgment, the Court finds that the continuing violation theory is inapplicable here. The Court's analysis as to the first two factors (similarity and reoccurrence) remains unchanged from its prior *Ruling* on Trinity's *Motion to Dismiss* regarding the applicability of the continuing violation theory.[45] However, the summary judgment evidence offered by Trinity, requires further analysis of the permanence factor. In his deposition testimony, Boyd admitted that he thought he was being discriminated against when he was issued a verbal warning on January 15, 2009.[46] Considering this admission the Court finds that "fairness and logic" required that Boyd act to protect his rights at that time.[47] Hence, all events leading up to and including the January 15, 2009 incident are time-barred as a matter of law.

Based on the Court's finding, only four incidents fall within the 300-day filing window: alleged inappropriate warnings issued on January 15, 2010 and December 13, 2010; alleged directive given to Boyd's supervisors to find a way to fire him on February 12, 2012; and the alleged inappropriate warning issued on July 12, 2012. While three of these incidents involved the same type of discriminatory actions--"inappropriate warnings"—the Court finds they are too infrequent to support the application of the continuing violation theory. Approximately one year lapsed between the first and second

---

[44] *Id.* (citing *Moskowitz v. Trs. Of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993)).
[45] Rec. Doc. 23.
[46] Rec. Doc. 36-3, p. 25.
[47] Note 39, *supra*.
32764

warning, while one and one-half years lapsed between the second and third warning. Accordingly, the Court finds that all of the incidents of discriminatory conduct giving rise to Boyd's race discrimination and racial harassment claims, with the exception of the January 7, 2013 crane operating incident giving rise to his official termination from Trinity, are time barred.

### B. Boyd's Racial Harassment Claim

Boyd claims that he was subjected to a hostile work environment because of his race. Normally, a *prima facie* case of racial harassment alleging hostile work environment consists of the following five elements: "(1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term or condition of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."[48] A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable."[49] Courts must look to the "totality of the circumstances" to determine whether a work environment is hostile and "focus [] on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance."[50]

---

[48] *Celestine v. Petroleus de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001)(citing *Watts v. Kroger Co.*, 179 F.3d 505, 509-10 (5th Cir. 1999) and *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986)).
[49] *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003)(citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).
[50] *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 523-24 (5th Cir. 2001)(quoting *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996)).
32764

The only remaining actionable instance of alleged harassment is the January 7, 2013 crane operating incident which led to Boyd's termination. Boyd adamantly denies committing the safety infraction[51] and claims he "ha[d] been set up to be fired concerning the incident"[52] because "[j]ust before the incident happened, Joe Jackson, Zachary [Washington] & Marty Mills, were seen talking off to themselves."[53] According to Boyd, these individuals conspired against him "[b]ecause they didn't like [him]."[54] Boyd also believed Jackson treated work release inmates, such as Washington, more favorably.[55] This is the extent of the evidence offered by Boyd that he was harassed by reason of his race. When considering the "totality of the circumstances," the Court finds that this one incident is not facially racial and lacks the frequency and severity necessary to give rise to a racial harassment claim. Accordingly, Boyd's racial harassment claim shall be dismissed.

### C. Boyd's Race Discrimination Claim Based on his Termination

The only remaining claim before the Court is Boyd's race discrimination claim based upon his termination. Trinity argues that Boyd's claim must be dismissed because he cannot establish his *prima facie* case. The Court agrees.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

---

[51] Rec. Doc. 36-3, p. 9 ("Q. And it's your position that you did not hit Zach Washington with the plate? A. No.").
[52] Rec. Doc. 36-3, p. 87.
[53] Rec. Doc. 36-3, p. 87. Boyd admitted that both "Mr. [Zachary] Washington and Mr. [Joe] Jackson are African American." Rec. Doc. 36-3, p. 33.
[54] Rec. Doc. 36-3, p. 33.
[55] Rec. Doc. 36-3, p. 17.
32764

individual's race . . . ."[56]  Because Boyd has not offered any direct evidence of discrimination, the *McDonnell Douglas* burden-shifting analysis applies.[57]  Initially, Boyd must establish a *prima facie* case of race discrimination by showing that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group."[58]  "Under the fourth prong's 'similarly situated employees' requirement, a plaintiff must show that he was treated less favorably than others 'under nearly identical circumstances.'"[59]  If Boyd satisfies his *prima facie* case, then the burden shifts to Trinity to articulate a legitimate non-discriminatory reason for its action.[60]  Thereafter, the burden shifts back to Boyd "to prove that the articulated reason is pretext for discrimination."[61]

In this case, only the fourth element is in dispute; therefore, to establish his *prima facie* case, Boyd must either show that he was replaced by a non-African American or that a non-African American employee, who engaged in comparable conduct under similar circumstances, was not terminated.

As for Boyd's replacement, Trinity has offered the *Declaration* of Mardy Mills ("Mills"), a Superintendent at Trinity, who attested to the fact that after Boyd's termination "two African-American individuals primarily assumed [Boyd's] job duties."[62]  Boyd offers

---

[56] 42 U.S.C. § 2000e-2(a)(1).
[57] *Johnson v. Manpower Professional Services, Inc.*, 442 Fed.Appx. 977, 981 (5th Cir. 2011).
[58] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).
[59] *Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014)(quoting *Love v. Kan. City S. Ry.*, 574 F.3d 253, 259-60 (5th Cir. 2009)).
[60] *Brown v. Home Depot USA, Inc.*, 2016 WL 1358766, *2 (5th Cir. April 5, 2016).
[61] *Id.*
[62] Rec. Doc. 36-3, p.122.
32764

no competent summary judgment evidence to refute Mills' attestation.[63]  Rather, Boyd argues that the Court should simply disregard Mills' *Declaration* in full because it is "not credible" and points to three paragraphs from his own *Affidavit* as support for his position.[64] Boyd's *Affidavit*, however, does not call into question Mills' credibility as to the resolution of a factual dispute regarding who replaced Boyd after his termination. Therefore, Mills' attestation shall be considered admissible evidence.  Accordingly, the Court finds that Boyd has failed to show that he was replaced by a non-African American.

Boyd has also failed to establish that he was treated less favorably than similarly situated employees outside of his protected class.  To establish disparate treatment, a plaintiff must show that the employer "gave preferential treatment to [another] employee under nearly identical circumstances; that is, that the misconduct for which [the plaintiff] was discharged was nearly identical to that engaged in … by [other] employee[s]."[65] "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[66]  The Fifth Circuit "require[s] that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken under nearly identical circumstances."[67]

---

[63] In his *Statement of Contested Facts*, Boyd argues that the Court should disregard Mills' *Declaration* because it "is not credible."  Rec. Doc. 40-1, p. 25.
[64] Boyd also pointed to Plaintiff's Exhibit 10 to support his position, but the Court struck this Exhibit in an earlier *Ruling*.  Rec. Doc. 52.
[65] *Okoye v. Univ. of Tex. Hou. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001)(alterations original)(internal quotation marks omitted)).
[66] *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).
[67] *Id.* (internal quotation marks omitted).
32764

In an attempt to show that he was treated disparately compared to others outside of his protected group under nearly identical circumstances, Boyd relies upon his own attestation that Trinity terminated him because of his race and "did not subject similarly situated white employees to the same obstacles in gaining promotions, training and assignments. These white employees are as follows: Jeremy Prejean; Ron; Austin; Earl; and Wendell."[68]  However, the Court finds that none of these Trinity employees are appropriate comparators.  As Boyd acknowledged during his deposition testimony, none of these five employees worked for the same supervisor, in the same department, or had the same job responsibilities and pay grade as Boyd.[69]  Additionally, Boyd has failed to produce any evidence showing that these Trinity employees had similar disciplinary records as him.  Nor can Boyd keep his disparate treatment claim alive based upon the assertion that Zach Washington, another Trinity employee, was treated more favorably either.  Aside from the fact that Washington held different job responsibilities than Boyd,[70] Washington is an African-American and, as a matter of law, this fact alone defeats Boyd's disparate treatment claim.[71]  Consequently, Boyd cannot raise a genuine dispute of fact as to whether another similarly situated employee who committed the same infractions was treated more favorably.

Because Boyd has failed to satisfy his *prima facie* case of race discrimination, the Court's analysis ends here, and Boyd's claim shall be dismissed with prejudice.

---

[68] Rec. Doc. 40-5.  Rec. Doc. 36-3, p. 28.
[69] Rec. Doc. 36-3, p. 28 ("Q. All right.  So were these people even in your same department?  A.  No, they're electrical, they're maintenance."; "Q. Did they have the same supervisor as you did?  A.  No, they didn't.").  Rec. Doc. 36-3, p. 48 (Boyd testified that "Maintenance always did get paid more than we did.").
[70] Mills attested to the fact that Washington held the position of "Fitter" and worked in the "prep shop department."  Rec. Doc. 36-3, p. 122.
[71] Rec. Doc. 36-3, p. 10.  When asked what Washington's race was, Boyd testified that he was "black."
32764

13

IV.     **CONCLUSION**[72]

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the *Motion for Summary Judgment*[73] filed on behalf of Trinity Marine Products, Inc. is GRANTED.

*Judgment* shall be entered accordingly.

Signed in Baton Rouge, Louisiana on June 15, 2016.

*[signature]*

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[72] Considering the Court's findings herein, Trinity is not liable for any damages; therefore, Boyd is not entitled to damages or back pay under Title VII.
[73] Rec. Doc. 36.
32764